UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TRAVIS DEVON WATKINS,

    Petitioner,

v().    Case No. 3:19-cv-865-TJC-JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

    Respondents.

# ORDER

## I. Status

Petitioner Travis Devon Watkins, an inmate of the Florida penal system, initiated this action by filing a pro se Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. See Doc. 1. Petitioner challenges a 2016 state court (Duval County, Florida) open plea of guilty and resulting judgment of conviction for second degree murder with a weapon. Petitioner is serving a thirty-five-year term of incarceration, to be followed by a ten-year term of probation. Respondents responded. See Doc. 8 (Resp.).[1] Petitioner replied. See

---

[1] Attached to the Response are various exhibits. The Court refers to the exhibits as "Resp. Ex."

Doc. 9. This case is ripe for review.[2]

## II. Governing Legal Principles

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's

---

[2] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citing Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The Court finds that "further factual development" is not necessary. Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal

3

> quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

### B. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of

4

reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

The two-part Strickland test applies to challenges to the validity of guilty pleas based on ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 58 (1985). The petitioner must still show that counsel's performance was deficient. See id. at 56-59; Lynch v. Sec'y Fla. Dept. of Corr., 776 F.3d 1209, 1218 (11th Cir. 2015). To establish prejudice, however, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59 (footnote omitted); Lynch, 776 F.3d at 1218.

There is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of

lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

Further, "[t]he question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

6

### III. Analysis

**A. Ground One**

Petitioner asserts his trial counsel was ineffective for misadvising Petitioner about the sentence he would receive upon entering an open plea of guilty and failing to explain to Petitioner the consequences of entering his plea. Doc. 1 at 6-9. According to Petitioner, trial counsel advised him that if he entered the open plea, the trial court would immediately release him from custody and only sentence him to a probationary term. Id. He also states that counsel used Petitioner's wife, Elise Watkins, to coerce him into entering his plea, and references E. Watkins's "affidavit" to support that allegation. Id. at 6 n.1. He states that but for trial counsel's improper coercion tactics, he would not have pleaded guilty and would have instead proceeded to trial. He also challenges the trial court's failure to order the state to file a response to his amended postconviction motion, which he filed to include E. Watkins's "affidavit."

Petitioner raised this claim in his initial Florida Rule of Criminal Procedure 3.850 motion for postconviction relief. Resp. Ex. E at 3-11. The trial court ordered the state to file a response to the Rule 3.850 motion. Id. at 42. Before the state responded, Petitioner filed a motion for leave to amend his Rule 3.850 motion to include E. Watkins's "affidavit." Id. at 47-48. Before the trial

7

court ruled on the motion to amend, the state responded. Id. at 50-55. In its response, the state recognized the two-prong Strickland standard as controlling authority and argued this claim should be denied based on Petitioner's sworn statements at his plea hearing. Id. The state explained:

> Defendant claims his attorney was ineffective for conveying to him a plea agreement wherein the State agreed the Defendant would be sentenced to a term of probation for second degree murder. However, the record refutes the [D]efendant's claim. During the plea colloquy the court ensured the Defendant's understanding that there was no agreed upon disposition or sentence between the Defendant and the State asking, "[h]as [anyone] promised you anything in order to get you to enter your plea?" Defendant answered under oath, "No, your Honor." During the plea colloquy the court asked, if the [D]efendant understood that there was no agreed upon disposition or sentence between the Defendant and the State of Florida, Defendant answered under oath "Yes, your Honor." Additionally, the Court made certain that Defendant was aware that the bottom of the guidelines sentence was 20.55 years, had reviewed the criminal score sheet with his attorney and fully understood and comprehended the information contained therein. A defendant is not entitled to an evidentiary hearing when the record demonstrates that post-conviction relief is not warranted. Stano v. State, 520 So. 2d 278, 280 (Fla. 1988). Since the record clearly refutes the Defendant's claims, his motion should be summarily denied.
>
> The Florida Supreme Court has ruled that trial courts should not nullify a defendant's sworn testimony when deciding on post-trial motions. Stano, 520 So. 2d at 279-80. Allowing such backslides in testimony would inundate the court with instances where a defendant

8

> files a motion that says his prior sworn statements to the court were not true. Id. Other courts have continued to follow the holding in Stano. In Iacono, the court reasoned allowing a defendant to change the statements he made while under oath condones lying and is against public policy. Iacono v. State, 930 So. 2d. 829, 830 (Fla. 4th DCA 2006). Therefore, in the instant case the trial [c]ourt should not allow the [D]efendant to recant his previous statements made under oath. Since the Defendant testified that his plea was freely and voluntarily entered into with no promises of a potential sentence, this Court should deny Defendant's motion without holding an evidentiary hearing.

Resp. Ex. E at 51-52 (record citations omitted). After the state responded, the trial court denied Petitioner's motion for leave to amend, explaining Petitioner failed to show good cause as to why the amendment was necessary. Id. at 81. The same day the trial court denied leave to amend, Petitioner filed his amended Rule 3.850 motion, attaching an "Affidavit of Elise Watkins."[3] Id. at 120-24. The "affidavit" was an unsworn, written statement from E. Watkins stating that trial counsel showed her Petitioner's interrogation video; asked her to persuade Petitioner to enter an open plea of guilty because he would be sentenced to life in prison if he went to trial; and advised her that if Petitioner pleaded guilty, he would receive a ten-year sentence. Id. A few days later, Petitioner filed a motion for rehearing of the trial court's order denying his request to amend. Id. at 125-27.

---

[3] Except for the inclusion of the "Affidavit of Elise Watkins," Petitioner's amended Rule 3.850 motion was identical to his initial Rule 3.850 motion.

9

Without referencing the motion for rehearing, the trial court then entered an order adopting the state's response and summarily denying Petitioner's initial and amended Rule 3.850 motions. Id. at 129-31. The trial court explained it "carefully reviewed the response and f[ound] that it address[ed] [the] claim with both factual and legal accuracy" and "therefore [found] it appropriate and judicially efficient to adopt the State's response as the [trial] [c]ourt's findings." Resp. Ex. E at 130. Petitioner appealed, and during the appeal's pendency, the trial court granted Petitioner's request for a rehearing of its order denying leave to amend, stating, "[d]espite the trial court denying [Petitioner's] [m]otion for leave to amend, the trial court considered both the Motion and the Amended Motion in its final Order denying both . . . ." Resp. Ex. H. Both Petitioner's initial Rule 3.850 motion and his amended Rule 3.850 motion were included in the record on appeal. Resp. Ex. E at 1-36, 85-124. The First District Court of Appeal per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. I.

To the extent that Petitioner argues the trial court erred during his postconviction proceedings by not ordering the state to file an amended response addressing his amended Rule 3.850 motion, such allegations do not present a cognizable constitutional challenge to the validity of Petitioner's judgment and sentence; and therefore, they are not appropriate on federal

10

habeas review. See, e.g., Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987) (argument that the state court failed to attach relevant portions of the record to refute Rule 3.850 motion does not undermine validity of the petitioner's conviction, and thus does not state a basis for habeas relief); see also Rolack v. Jones, No. 15-CV-22270-WILLLIAMS, 2016 WL 10707030, at *27 (S.D. Fla. Nov. 2, 2016) (holding that the petitioner' claim that state postconviction court failed to allow him leave to amend his Rule 3.850 motion not cognizable on § 2254 habeas review).

To the extent that Petitioner argues his trial counsel misadvised him about the sentence he would receive after entering his open plea, the Court addresses that claim in accordance with the deferential standard for federal court review of state court adjudications. In applying such deference, the Court finds the record supports the state court's finding that counsel was not ineffective. According to the arrest and booking report, Petitioner stabbed the victim, who was Petitioner's next-door neighbor, after an argument. Resp. Ex. A at 2. At least one individual witnessed the killing and after the incident, Petitioner told his wife and roommate that he stabbed someone. Id. Police arrested Petitioner and charged him with second degree murder with a weapon. While Petitioner suggests counsel advised him that "he would be released from custody" if he entered his open plea, Petitioner, under oath, testified at the plea

hearing that he was entering an open plea of guilty because he believed it was in his best interest. Id. at 543-55. He stated that he understood the implications of his plea, including that there was no agreed upon disposition or sentence in exchange for his plea. Id. at 545-47. Petitioner explained he knew that by entering his plea, he faced a maximum term of life and a minimum guidelines sentence of 20.55 years incarceration and reviewed a copy of the scoresheet in open court. Id. at 548-52. Petitioner also acknowledged the constitutional rights he waived by entering his plea. Id. at 549-52. He testified no one had threatened or coerced him into entering his plea, nor had anyone promised him anything in exchange for his plea. Id. at 553. He also stated he was entering his plea freely, willingly, and voluntarily. Id. Based on Petitioner's representations, the trial court accepted his plea, finding he entered it voluntarily with full understanding of the consequences thereof. Id. at 559.

Before sentencing, trial counsel filed a motion requesting the trial court impose a downward departure sentence. Id. at 228. At the sentencing hearing, trial counsel called four witnesses on Petitioner's behalf, including E. Watkins who suggested she understood the seriousness of Petitioner's conviction, but asked the trial court to sentence Petitioner to a probationary term. Id. at 612-13. The trial court then heard argument from the state who requested the trial court impose a sentence between life and a fifty-year term of incarceration. Id.

at 680. Trial counsel highlighted mitigating evidence and requested that the trial court depart from the minimum guidelines sentence and impose any departure sentence it deemed appropriate, including a possible probationary period, but trial counsel made clear that neither he nor Petitioner believed the trial court would impose a particular sentence. Id. at 405. The trial court denied trial counsel's request, found a departure sentence was inappropriate, and sentenced Petitioner to a thirty-five-year term of incarceration, followed by a ten-year term of probation. Id. at 713-15.

Even if trial counsel advised Petitioner to enter a plea rather than proceed to trial and consulted Petitioner's wife during the process, the record shows that Petitioner's decision to enter his open plea of guilty was voluntarily his own, made with a full understanding of the consequences that followed. See, e.g., United States v. Himick, 139 F. App'x 227, 228-29 (11th Cir. 2005) ("[A] defendant's reliance on an attorney's mistaken impression about the length of his sentence is insufficient to render a plea involuntary as long as the court informed the defendant of his maximum possible sentence.").[4] Thus, upon thorough review of the record and the applicable law, the Court finds that the

---

[4] Although the Court does not rely on unpublished opinions as precedent, they may be cited in this Order because the Court finds their reasoning persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022). Rule 32.1 of the Federal Rules of Appellate Procedure permits the Court to cite as persuasive authority unpublished opinions that have been issued on or after January 1, 2007. Fed. R. App. P. 32.1(a).

13

state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of Strickland, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. See 28 U.S.C. § 2254(d). Ground One is denied.

**B. Ground Two**

Petitioner asserts his trial counsel was ineffective for failing to file a motion to withdraw plea; withdraw as Petitioner's attorney of record; or adopt Petitioner's pro se motion to withdraw plea filed after sentencing, because "he did not receive the probation to which he was advised by counsel he would receive following his open plea of guilty." Doc. 1 at 12-13. He also argues the trial court denied his "right to due process of law by failing to hold a 'full and fair' hearing on Petitioner's pro se motion." Id. at 13.

Petitioner raised this claim in his initial and amended 3.850 motions. Resp. Ex. E at 11-31, 95-14. The state responded to the claim on the merits. Id. at 53-54. The state explained:

> Defendant claims that his coun[sel] was ineffective in failing to file a motion to withdraw his plea. Failing to file a motion to withdraw a plea can state a facially sufficient claim of ineffective assistance of coun[sel] if the plea was involuntary. However, if the record establishes that the defendant's plea was voluntary, then the trial counsel is not ineffective for failing to withdraw the plea. Lane v. State, 839 So. 2d 854, 855 (Fla. 1st DCA 2003). Additionally, the Florida Supreme Court has stated that an attorney cannot be

14

considered ineffective for failing to file a meritless motion. Lugo v. State, 2 So. 3d 1 (Fla. 2008). In Sheppard v. State, the Florida Supreme Court noted that the defendant bears the burden of presenting a "manifest [] [in]justice has occurred."

In the instant case the Defendant has not carried his burden of establishing that a manifest [] [in]justice has occurred. Defendant is quoted in the record to be freely and voluntarily entering into the plea. Pursuant to the trial transcripts the Defendant's level of education and military experience ensure that he is comfortable and competent with the English language such that he fully understood the consequences of his plea. Furthermore, the trial transcripts indicate the Judge took great pains to ensure the Defendant was comfortable with entering the plea, "[j]ust for the record I did pause and give you a minute to meet with Mr. Bateh . . . is that accurate?" the Defendant replied in the affirmative and stated that he was comfortable moving forward with his plea. At no time during the plea colloquy does the defendant fain [sic] on his intention to enter a plea of guilty, nor is there any evidentiary support for the presence of an "adversarial relationship" between the Defendant and his attorney. The record does support that even after given ample time to speak with his attorney, Defendant still wished to enter his plea. The Judge states "Although you're feeling emotional do you feel fully comfortable preceding forward, that is what you wish to do, enter your plea of guilty?" Defendant responds under oath with "Yes, your Honor." This line ·or question and answer directly refutes the Defendant's claim of an adversarial relationship or involuntary plea and provides conclusive evidence that the plea was freely and voluntarily entered into. Thus, the State suggests that this Honorable Court may deny Ground 2 based upon the record provided by the State, and the argument contained within this Response, without holding an evidentiary hearing.

15

Resp. Ex. E at 53-54 (record citations omitted). The trial court adopted the state's response and summarily denied this claim, explaining it "carefully reviewed the response and f[ound] that it address[ed] [the] claim with both factual and legal accuracy" and "therefore [found] it appropriate and judicially efficient to adopt the State's response as the [trial] [c]ourt's findings." Resp. Ex. E at 130. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. I. The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. In doing so, the Court summarizes the relevant procedural history.

Five days after he was sentenced, Petitioner filed a pro se motion to withdraw his plea under Florida Rule of Criminal Procedure 3.170(*l*). Resp. Ex. A at 405. In the motion, Petitioner asserted that he followed his attorney's advice and entered his guilty plea with the intent to reserve his right to appeal the trial court's denial of his request for a downward departure sentence. Id. He maintained that his plea documents did not reflect Petitioner's desire to pursue that appeal, and requested "in an abundance of caution . . . to withdraw the plea and either reenter it reserving [his] appellate rights or go to trial." Id. at 406. The state moved to strike the pro se motion, and the trial court conducted a hearing to address the issues. Id. at 720-50.

During the hearing, trial counsel declined to adopt the pro se motion, but

16

suggested that the trial court ask whether Petitioner wished to discharge counsel or represent himself and proceed with the motion. Id. at 721. Petitioner then addressed the trial court and stated that he wished to discharge his trial counsel and withdraw his plea because his attorney misled him and his wife about the sentence he would receive after entering his plea. Id. at 723-28. Trial counsel responded to Petitioner's accusations by advising the trial court that before Petitioner's guilty plea, he consulted Petitioner several times and never misled or coerced him into entering his plea. Id. at 728. Trial counsel explained that because this was a homicide case, he "would never . . . explain[] to an individual that [he] represent[s] that they would only be in [prison] for . . . 12 months . . . ." Id. at 730. He stated, "[n]ever in [his] time representing [Petitioner] did [he] ever give him a specific statement that he would be released or he would get out in X amount of time." Id. Petitioner responded that trial counsel never "spoke directly to [him]" about a specific sentence, but that trial counsel spoke through Petitioner's wife who repeatedly asked him to enter a plea. Id. at 734. Trial counsel replied that Petitioner asked him to communicate with his wife throughout the process, but "at no time did [he] force her to speak to [Petitioner]." Id. Rather, trial counsel expressed his concern about going to trial given the state's evidence against Petitioner. Id.

The trial court then advised Petitioner that it had appointed separate

17

appellate counsel to represent Petitioner on direct appeal and asked him if he wished to discharge that counsel. Id. at 740-47. Petitioner responded that he wished to keep appointed appellate counsel. Id. Given these representations, the trial court denied Petitioner's previous oral request to discharge counsel and struck Petitioner's pro se motion to withdraw plea as a nullity. Id. at 748-50. On direct appeal, Petitioner, with the benefit of counsel, filed an initial brief under Anders v. California, 386 U.S. 738 (1967), representing that no good-faith argument of reversible error could be made. Resp. Ex. B. The First DCA provided Petitioner with an opportunity to file a pro se brief, but he declined to do so. Resp. Ex. C. The First DCA per curiam affirmed Petitioner's judgment and sentence without a written opinion. Resp. Ex. D.

As discussed supra, Petitioner fails to show that he entered his plea based upon trial counsel's erroneous advice. Likewise, Petitioner fails to show a meritorious basis for withdrawing his plea, and thus trial counsel cannot be ineffective for adopting a motion lacking in merit. As such, upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim was neither contrary to nor an unreasonable application of Strickland, and it was not based on an unreasonable determination of the facts given the evidence presented to the state court. See 28 U.S.C. § 2254(d). Further, because the trial court conducted a hearing,

during which Petitioner ultimately retracted his request to discharge counsel, any due process claim fails. Ground Two is denied.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. 1) is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

2. The **Clerk** shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

3. If Petitioner appeals this denial, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[5]

---

[5] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

**DONE AND ORDERED** at Jacksonville, Florida, this 17th day of May, 2022.



TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C:   Travis D. Watkins, #J56264
     Counsel of record